# Bledsoe *v.* Doe *ex dem.* Little.

The doctrine is well settled, that a patent for land from the government is evidence that every thing has been done which the law required to justify its being issued.

The court know judicially, that, there is a law requiring the President to issue his proclamation, directing the Registers and Receivers of the public land offices, to offer public lands for sale.   But cannot know negatively that particular lands were ever offered for sale.

It is a sufficient description of land, to give the number of the section, township and range, according to the public surveys.

Where the surveyor swore positively to the identity of the land in dispute, and the jury found for the plaintiff, it was held sufficient, although the information of the surveyor was in part derived from suspicious sources.

" That deeds bear date anterior to the patent does not vitiate them."

The Statute of Limitations does not run against the United States; it is a statute of policy referring to individuals merely.   The statute can only begin to run in reference to right of entry, at the period of twenty years after the United States has parted with its title.

A deed to lands held adversely under color of title, is void on the ground of maintainance.

A deed from one claiming title, is sufficient color of title, when accompanied by the possession of the grantee, or that of his tenant.

It is a presumption which may be fairly indulged, that possession held under a deed, is compatible with the boundaries given in the deed.

Where a party claims title under a sheriff's sale and deed in pursuance of a decree of the chancery court, the decree must be produced.

A deed takes effect by the sealing and delivery, and without proof of these, it can have no effect whatever, and is inadmissible in evidence for any purpose.   A deed does not, like a record, import verity on its face, its genuineness must be proved.

Where, on a motion for a new trial, on the ground of newly discovered evidence, the affidavit states the absence of the subscribing witness to a deed, and that the affiant had supposed the witness dead, and discovered the contrary only during the progress of the trial, and it did not appear that any preparations had been made to prove the hand writing—held that due diligence had not been used to procure the testimony.

Where the plaintiff in ejectment claimed certain premises, and the jury found a general verdict for the plaintiff, but he had shown title to a part only, it was held, the plaintiff was entitled to a writ of possession only to the part to which he had shown title, and as that should have been the judgment of the court below, it was the order of the appellate court.

Vol. IV.—2

Bledsoe *v.* Doe *ex dem.* Little.

IN ERROR from the circuit court for the county of Adams.

Declaration in ejectment in common form, for a house and lot under the hill in the city of Natchez, on the East side of Silver street. The facts and points of law presented on the trial, are contained in five bills of exceptions taken at the hearing of the cause.

1. Bill of exceptions states, that plaintiff offered to read a patent, issued under a private act of Congress, to the legal representatives of Henry Willis, dated 5th October, 1821, to which defendant objected. Court overruled objection. Plaintiff then offered the two acts of Congress in evidence; to which defendant objected. Court permitted them to be read, which was done, and then the patent was read.

2. Bill of exceptions states, that plaintiff then offered a deed from J. H. McComas and wife, to Gaml. Pease, dated 15th November, 1820, for fractional section 77, township 7, range 3, west, 21 and eighty-hundredth acres. Defendant objected, &c.

3. Bill of exceptions states, that plaintiff offered a deed from Gaml. Pease and wife to plaintiff, dated 22d December, 1820, for 22 acres of land, section 77, township 7, range 3, west. The same described in the above mentioned deed. Defendant objected, &c.

4. Bill of exceptions states, that defendant offered a deed from White Turpin to prove color of title, which was ruled out, because the judgment was not produced.

5. Bill of exceptions states, that defendant moved the court to grant a new trial, which was refused, and that on the hearing of the motion, the defendant read his own affidavit of the materiality of T. Downing's evidence, to prove execution of a deed; that he lives in Monroe county, and he could not obtain his evidence on the trial because he did not previously know where he lived.

1. And that the evidence on the trial was first a deed from J. H. McComas and wife to G. Pease, dated 15th November, 1820, and conveys to grantee, fractional section 77, township 7, range 3, west, 21 and eighty-hundredth acres in the city of Natchez, at the old fort, which had been located under an act of Congress of 8th May, 1820, for the relief of the legal representatives of Henry

Willis.  The reading of this deed was objected to, and objection overruled.

2. A deed from G. Pease and wife to Peter Little, the plaintiff, for the same land, dated 22d December, 1820.  Exceptions were taken to this testimony.

3. A patent from the United States to the legal representatives of Henry Willis, dated 5th October, 1821, for the same land.  Objections were also made to the reading of the patent.

4. One Chotard stated, that Mrs. McComas, wife of J. H. McComas, and Mrs. Chotard, her mother, were the only legal representatives of Henry Willis, deceased; that he had understood there had been a division of land between them, and the land in Natchez was allotted to Mrs. McComas—that Mrs. Chotard was dead.  He further stated, that Mrs. Chotard was the widow of Henry Willis, and Mrs. McComas his only child.

5. L. Wailes was then introduced and produced his map and notes of the survey of the premises in controversy, and stated that said survey embraced fractional section 77, township 7, range 3, west; that the lot shaded blue was the lot in controversy, said lot has a front of eighty two feet; that the corner is 110 or 112 feet from McCabe's corner.  On cross examination he said he knew the land to be fractional section 77, by a map from the land office which he produced.  And that he was governed by said plot and the directions of P. Little.

6. Duval, another witness, stated, that after the late fire, Little built a fence, and Bledsoe built a chicken house on the premises.

The defendant then read a deed from David and wife to Benjamin Brustie, for a lot 29 feet front, running back on the east side of the street leading to the lower landing under the hill, bounded above by a lot belonging to Packard, dated May 28, 1812.

A deed was introduced from Brustie and wife to Richard Bledsoe and Cyrus Marsh, dated November 5, 1835, for two lots adjoining, of 29 feet each, on the east or south side of Silver street, under the hill in Natchez, front of 29 feet; also a lot adjoining the same on the lower side, of 29 feet front also.

A lease was also read from Benjamin Brustie, to Catharine Howard, of a lot under the hill joining R. Perkins, opposite R. S.

Smith's, containing 25 feet front and back to the bluff, for 5 years, dated 28 October, 1831.

Also an assignment of the above lease to R. Bledsoe, dated 25 May, 1835.

A deed was introduced from Brustie and wife for the same lot, dated 25 September, 1835, to C. Durr.

Also a conveyance from C. Durr to Bledsoe and Marsh for same lot, dated 25 September, 1835.

Defendant then offered as color of title, a deed from White Turpin, sheriff of Adams county, to John Taylor, dated January 31, 1815, sold under a decree of the chancery court, *v.* J. Pickard, and a deed on the back of the same, from E. D. W. Ister, and J. W. King, heirs, and attorneys for other heirs of John Taylor, to B. Brustie, dated February 26, 1831, for a house and lot on the east side of the road to the landing, bounded on the north-east by land of D. McGrath, on the south-west by land of V. Sellers.

Defendant also offered in evidence, a deed from McGrath and Railton to Robert Cole & Co., dated March 3, 1818, for a lot, 23 feet front and 48 back, on the east side of Main street, between the lots of Isaiah Pickard and Peter Little, and assignment thereon from Robert Cole & Co., to Mrs. S. Ballou, who is now the wife of Brustie, dated April 15, 1819.

John Henderson, another witness, stated that Brustie was in possession of a lot under the hill, on the left hand of the road near the landing.

C. Miller deposed that Brustie was in possession of a lot on the left side of the road leading to the landing, in 1820, and previous.

One A. Mardis stated, that he owned a lot which he bought of John David, and lived on it in 1809, below Watkins. Watkins' lot was the next below McCabe's. Witness had at that time a lot leased from Little, and Brustie's lot was still below. Brustie was burned out twice; said lot was about where Bledsoe now has his building.

J. Gobeau stated, that Brustie rented the premises to T. Perkins, in 1823, and that Brustie had always been in possession, or had a tenant there, except when he was burnt out. Since the third fire Bledsoe put up a fence and so did Little. Gobeau said that some years ago Brustie had a long narrow house, the end to

the street, and a dispute arose between him and Little about the lot, and Brustie moved the house 30 feet up the street, and gave it up to Little.

L. Robetaille stated, that Brustie purchased a house and lot from one Johnson who had lived in it before 1809, and that he bought a lot of David in 1812. That Brustie was living there in 1813, at the time of the first fire. It was a long house on the left side of the street, near the landing. After the fire he built again, and was burnt out again in 1815. (Stated Schuyler was dead, and Downing was living in Monroe county; they were witnesses to a deed.)

Instructions given by the court.

1. No length of time will bar the title of the government.

2. That if the government had the title to the land in 1820, that adverse possession could not commence until the government parted with the title.

Defendant moved for the following instructions:

Unless Mrs. McComas was the sole legal representative of Henry Willis, the plaintiff cannot recover.   Refused.

If Brustie was in possession under adverse claim, when McComas and wife sold to Pease, and Pease and wife sold to Little, the deeds were void.   Given.

If the land in controversy is not in section 77, township 7, range 3, west, the plaintiff cannot recover.   Given.

The plaintiff must prove that the land is in section 77, township 7, range 3, west.   Given.

Winchester, for plaintiff in error.

Ejectment for a lot of ground situated under the hill in Natchez.

Exceptions were taken to the admission of the title papers offered by the plaintiff below, and to the evidence of the surveyor Wailes, and the plots of survey, also to the rejection of defendant's title papers.

Exception was also taken to the decision of the court overruling the motion for a new trial.

1. The plaintiff below shewed no title to the lots in controversy, and the rule is, he must recover only upon the strength

2*

of his own title, and not on the weakness of the defendant's title.

1. The record shews, that the only paper title set up by the plaintiff, was a patent from the United States, dated October 5th, 1821, "issued pursuant to two acts of Congress of May 8th, 1820, and December 29th, 1820, upon the return of a survey, by the surveyor general, of fractional section 77, in township 7, range 3, west, containing 21 and eighty-four hundredth acres, in favor of the legal representatives of Henry Willis."

This is the fountain head of the title.

By said two acts of Congress, the legal representatives of Henry Willis were authorized to locate on any lands, which had been previously offered for sale, and which was subject to entry.

1. There was no evidence that the lots in controversy ever were offered for sale, or were subject to entry, and in fact they never were.

2. There was no evidence, that the lots in controversy are included within fractional section 77, in township 7, range 3, west, containing 21 and eighty-four hundredth acres, according to the survey returned under the acts of May and December, 1820, by the surveyor general.

3. Peter Little shewed no chain of title from the legal representatives of Willis, under the patent to himself.

The deeds from McComas and wife to Pease, and from Pease to Little, are both dated before the act of Congress of December, 1820, and convey a fractional section, which could not have been located, surveyed, and the survey returned under the acts of May and December, 1820.

4. There was an adverse possession in Brustie (under whom Bledsoe was in possession,) at the time McComas and wife conveyed to Pease, and at the time Pease conveyed to Little, which rendered these deeds void for maintainance.

For all, and for each of the above four reasons, the plaintiff shewed no title to himself, upon which he could recover the lands in controversy. Even if the defendant has no title, the plaintiff shews no right to turn him out of possession.

2. But the defendant below, shewed an uninterrupted possession for 20 years and more, under a good and *bona fide* colorable title,

and this possession under our statute of limitations is good against the world.   Some of his deeds were ruled out, which ought to have been admitted as a color of title, at least.   Jackson *dem. v.* Ellis & West, 3 Johns. R. 118; lessee of Ewing *v.* Burnet, 11 Peters, 41.   A void deed is admissible as colorable title.

Answer to Montgomery.

Thirty feet front and back, will mean back as far as vendor had a right to convey.

The deed in 1818, was admissible to shew an adverse possession, at the time McComas conveyed to Pease, and also to shew a continued possession after 1818, under adverse title.   1 Caine's Rep. 358. Jackson *dem.* Putnam *v.* Bowen.

Where a person claims an adverse possession under color of title, his possession is not bounded by his actual possession, but is co-extensive with the title under which he claims.   But where he enters and claims possession under no title, there his adverse possession will be confined to the metes and bounds of an actual possession.

As to adverse possession, and that it may be held under defective title, or even void title.   See 9 Johnson, 57; 18 Johnson, 40, 359; 13 Johnson Rep. 406.

Was the land recovered embraced in the fractional section described in the patent?

The diagram from the land office, and Wailes' survey by that diagram, as directed by the plaintiff, Little, is the only evidence. The diagram called for no place to begin, no course or distance to run, and as to boundaries, it called for none, unless the river Mississippi, the City of Natchez, and the names of Girault and other individuals can be called a reference to boundaries.   There is not even the certificate of the surveyor to it, and nothing to show that these were intended as designation of boundaries.   But if there were, the survey of Wailes was not made by any boundaries named.   He was directed wholly by the plaintiff, Little, who surely cannot be a witness in his own case, to say where the boundaries of the fractional section are.   The shape of the plat, and the number of acres, is all Wailes had to guide him except the directions of Little, and his survey shews thirty instead of twenty-one acres.

Bledsoe *v.* Doe *ex dem.* Little.

Montgomery & Boyd, *contra.*

1. The court did not err in admitting the plaintiff's patent, because a patent pre-supposes and is conclusive evidence that every pre-requisite to its emanation has been performed.    9 Cranch, 98 ; the law authorized it ; land laws, 774, 785.

2. The deeds from McComas and wife to Pease, and from Pease and wife to Little, although they bore date before the date of the patent, recite a fact which must have existed, as such fact alone could be the basis of the patent ; but if they had not a shadow of title at the date of the deed, and afterwards acquired a good title, it will enure to their grantee.    11 J. R. 91.    13 J. R. 316, 320.

3. The deeds offered by appellant were inadmissible.    The one from W. Turpin recites a decree of chancery commanding the sheriff of Adams county to sell the house and lot therein described, and also recites that he was sheriff.    The decree should have been produced.    Familiar rules—all Bledsoe's deeds void for uncertainty.

4. The court should not have grante 1 a new trial, because—

1. Adverse possession is no defence against the government, and the action was brought in less than twenty years after the title emanated from the government.    See Angel on Limitations, 366-9.

The deeds from McComas and wife to Pease, and from Pease and wife to Little were not void for champerty, because it is uncertain what lot was held adversely at their date by Brustie, as his location was shifted at one time, as proved by Gobeau, and was frequently vacant.

Adverse possession must be by actual visible boundary and must be continued in the same place.    See 2 John. Rep. 230.    1 do. 156.    3 J. C. 124.

Those who claim under Mrs. McComas were entitled to recover her interest in the land, although she was not sole legal representative of Henry Willis, deceased.    1 John Cases 231.    See Adams on Eject. 295.    She was the only heir.

The exact correspondence between the survey made by Wailes and the map from the land office is sufficient evidence of the *locus in quo.*    S. R. Newman *et al. v.* G. Foster's heirs.    High Ct. E. and A. January, 1839.

Bledsoe *v.* Doe *ex dem.* Little.

The affidavit of newly discovered testimony is not sufficient, it does not shew any diligence to get the witness. The deed he wanted to prove was dated 3d March, 1818, and suit was commenced 2d August, 1836. So that the deed did not show a color of title which would protect the defendant.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The defendant in error brought ejectment against the plaintiff in error for a lot of ground in that part of Natchez called "Under the Hill," and obtained a verdict. A motion was made for a new trial, which being refused, exceptions were taken. The plaintiff below in support of his title relied on a patent to the legal representatives of Henry Willis for fractional section number seventy-seven, in township seven, of range three, west of the basis meridian line; a deed from McComas and wife to Pease, and one from Pease and wife to the plaintiff, for the same land mentioned in the patent. A surveyor was sworn who proved that the lot in controversy was within the land granted by the patent; and a witness was also sworn who proved that Mrs. McComas was the only child of Willis.

To the introduction of the patent and deeds, the defendant's counsel objected, and also to the testimony of the surveyor.

The objection to the patent is, that it was procured in fraud of law, because the special acts of Congress under which it emanated, did not authorise Willis's heirs to locate on any lands which had not been offered for sale, or on town lots; and it was insisted on that the court is bound to know that the land granted was never offered for sale.

This objection is untenable. We know judicially that there is a general law requiring the president to issue his proclamation requiring the registers and receivers of the public land offices to offer the lands for sale, and that they are not subject to private entry until after they have been so offered; but we cannot know negatively that the land in question never was so offered. The law is directory, and the proclamation and sale are mere official acts. The doctrine is now too well settled to be doubted, that a patent for land is evidence in a court of law that every thing has been done which the law required to justify the issuing of it. It

pre-supposes that all legal steps have been taken to consummate the title. The act of Congress of the 8th of May, 1820, authorized the representatives of Henry Willis to enter without payment, in any of the land offices of Mississippi or Alabama, thirteen hundred arpens of land, the entries to be made agreeable to the surveys made by the United States surveyor. The act of the 29th December, 1820, prohibited them from entering any town lots or lands reserved by the United States, but we cannot know whether the entry was made prior or subsequent to the last act, even if it would be proper to institute such an inquiry. The patent merely recites that they had deposited their certificate of entry in the general land office, but when the entry was made does not appear. The patent is based upon this certificate, and we cannot now question the propriety of the entry, especially in the absence of testimony shewing how and when it was made. It is not denied that the government had a right to the land, and the patent is evidence that the right has been legally transferred to the patentees. We do not understand either that the entry was made according to a survey made in pursuance of the above mentioned acts, but according to the surveys previously made by the government. The acts did not authorize new surveys to be made. The patent passed the legal title to the heirs of Willis; does the plaintiff derive title from the heirs?

It was proven positively by Chotard, that Mrs. McComas was the only child of Willis; she, therefore, had a right to convey. That she and her mother had considered themselves jointly interested, and had made arrangements to divide the land, cannot affect the right of the vendee of Mrs. McComas. The chain of title from Mrs. McComas to Pease, and from Pease to Little, is complete.

But it is said, that the deed from McComas and wife, is not sufficiently certain in description. The land is described as fractional section seventy-seven, in township No. 7, in range No. 3, west, following the description in the patent, and the same description is given in the deed from Pease to Little. It is sufficient description of land to give the number of the section, township and range according to the public surveys, and perhaps it is the very best description that could be given, because those surveys are pub-

Bledsoe *v.* Doe *ex dem.* Little.

lic records, and afford certain means of fixing the identity of land.

It is also said, that it does not appear that the lot in question is within the section conveyed to the lessor of the plaintiff. The testimony of Wailes, the surveyor, is conclusive on this point. He produced a diagram of his survey, and also a copy of the land office map, and stated that his survey embraced fractional section No. 77, mentioned in the patent, and that the lots shaded blue were the lots claimed by defendants. When asked how he knew the boundaries of section seventy-seven, he stated that he was governed by the office copy of the map, and the directions of Little. He does not state which had the greatest influence, and, although he may have derived his information in part from a suspicious source, he undertook to speak positively. His testimony was not legally incompetent, and the jurors were the judges of his credibility.

That the deeds bear date anterior to the patent, does not vitiate them. The patent is the consummation of title, predicated on the certificate of entry, and relates back to the date of the entry; and even if the deeds were insufficient at the time for want of capacity to convey, they became sufficient afterwards, because the title of a vendor, which is imperfect at the time, but which afterwards becomes perfect, enures to the benefit of the vendee as a necessary consequence. The vendor could not recover on his subsequently acquired title, he would be estopped by his warranty, and so would all subsequent purchasers under him.

We must, therefore, conclude that the lessor has shown a good title to the lot in dispute, and must recover, unless the defendant has shown enough to defeat him.

The defendant does not rely on a better title, but on adverse possession under color of title, for two purposes; first, because he says, such possession has existed for twenty years next before the commencement of the suit; and second, because such possession existed when Little acquired his title from Pease, and that the deed was therefore void for maintainance.

The statute of limitations constitutes no defence. The suit was commenced within less than twenty years after the Government parted with the title to the land, and it could only begin to run at

that time.   It did not run against the United States, because it is
a statute of policy, referring to individuals merely, having for its
object the repose of society.   No laches are to be imputed to the
government, nor is it to be charged with disturbing the peace of
society by suspicious or ill-founded claims.   Angel on Limitations,
369, 70, 71.   Wilson *v.* Hudson, 8 Yerger, 398.

It is admitted that if Brustie was in possession adverse under
color of title at the time Little acquired his right by the deed
from Pease, that the deed was void for maintainance.   The law
being admitted, we have only to enquire into the proof.   For the
lessor of the plaintiff it is contended that the locality of Brustie's
lot is not shewn with sufficient certainty, and that the deeds are
not sufficient to raise color of title.

The first evidence offered by the defendants was a deed from
David and wife to Brustie, bearing date 28th of May, 1812, for
a lot in that part of the city of Natchez called "under the hill,"
being on the east side of the street leading to the lower landing,
bounded on the upper side by a house and lot belonging to Josiah
Packard, and on the lower side by a house and lot belonging to
Hosey Fleris, containing twenty-nine feet front.   The witnesses
Henderson and Miller stated that Brustie was in possession of a
lot under the hill on the east side of the road leading to the land-
ing, in 1820 and previous.   The witness Mardis stated that
Brustie owned a lot which he bought of David, and was living
on it in 1809; and that said lot is about where Bledsoe, the
defendant, has erected his building.   The witness Gobeau stated
that Brustie rented the premises in dispute to Perkins in 1823,
and that Brustie had always been in possession either by him-
self or a tenant, except when burned out, and that since the last
fire Bledsoe put up a house on the lot.   Robetaille stated that
Brustie purchased a lot of Johnson in 1809, and that he pur-
chased of David in 1812 and was living there in 1813 at the time
of the first fire, after which he built again.   That the lot was on
the left hand side of the street near the landing.

This is the substance of the testimony, and although it is not
precise or definite in regard to the boundary of the lot, yet it shews
with reasonable certainty that Brustie was living on the lot
which he purchased of David; and that he must have been there

about the time Little acquired title.   It is a presumption which may fairly be indulged that the possession held under a deed is compatible with the boundaries given in the deed.   Brustie's possession was neither loose nor equivocal, but an actual occupancy, a *possessio pedis*, definite, positive, and notorious.   Was it held under color of title.   In the case of Jackson *ex dem.* Lathrop *v.* Demont, cited, the title was said to be colorable, derived from a vendor who had no title, or whose title was not shewn. In Coxe's lessee *v.* Peck and others, 3 Yerger 435, a devise of land to the defendants was held to give color of title.   In the case of Love *v.* Love, 2 Yerger 288, the supreme court of Tennessee went a step further and decided that a deed constituted color of title, although the vendee knew when he received it, that the vendor had no right to convey.   Although the propriety of this decision may be doubted, taken to its full extent, yet the others go far enough for the case before us.   Brustie held under a deed apparently sufficient, and we cannot know but what he received it in confidence and good faith, under a belief that his grantor had a right to convey.   It was sufficient color of title.

But it seems that Brustie sold and the defendant claims through him two other lots, in regard to which the defence must fail.   His possession of the second lots is by no means so clearly proven.   In fact we have no certain evidence that he ever had the actual possession.   The witnesses do not state how far his possession extended, nor do they speak of the possession of but one lot.   But independent of this objection, he shows no color of title.   The deed from Turpin, the sheriff, was properly ruled out because the decree was not produced.   And the deed from McGraw & Railten was also properly ruled out, because it was not proven.   A deed takes effect by the sealing and delivery, and without proof of these it can have no effect whatever, and of course must be inadmissible as evidence for any purpose.   Its genuineness is to be proved.   It does not, like a record, import verity on its face.   If it were not genuine it could not give even color of title, and the court could only know that by the evidence of the subscribing witness, or by proving his hand writing if he were dead.

The affidavit of newly discovered evidence, in support of the motion for a new trial, is insufficient.   The defendant swears that

Bledsoe *v.* Doe *ex dem.* Little.

Downing is a witness to the deed from McGraw & Railten, and that he, only discovered during the trial that Downing was still living.   He must have known that it would be necessary to prove the execution of the deed, and that Downing was the witness.   He should therefore have shewn proper diligence in endeavoring to obtain his testimony.   With proper exertions the testimony might have been obtained, and a new trial cannot be granted for newly discovered testimony, which with reasonable diligence might have been had at the first.   2 Caine's Rep. 163.   18 J. R. 489.   Besides, we do not know that Downing would prove the execution of the deed if present.   No affidavit of his has been produced.   It is a little surprising too, if the defendant thought Downing was dead, as we must infer he did from the affidavit, that he was not prepared to prove his hand writing.

Under this view of the prominent points in the case, was the defendant entitled to a new trial?

The plaintiff brought his suit for five acres of land, and obtained a general verdict.  He has shewn title to a part, and therefore had a right to recover; but his title fails as to the twenty-nine feet. He was entitled to a writ of possession, for that part to which he shewed title, but the court might and should have limited the writ to that part only, which must be the order of this court on the authority of Jackson *ex dem.* Moore *v.* Van Bergen, 1 Johnson's Cases, 101; and the new trial must be refused.