EASTMAN-GARDNER Co. v. WILLIS J. BARNES.

[49 South. 258.]

1. STATE LANDS. *Swamp and overflowed lands. Taxation. "Tax lands."*

Lands granted by the United States to the state as "swamp and overflowed lands," when patented by the state to a purchaser become taxable, and if thereafter sold to the state for taxes, the same will be held by the state as "tax lands" and not as "swamp and overflowed lands."

2. SAME. *"Tax lands." How sold. Land commissioner.*

"Tax lands" can be sold by the state, through the land commissioner, only under the laws regulating the sale of such lands.

3. SAME. *Second sale of lands as "swamp and overflowed lands." Illegality.*

A second sale of lands by the state as "swamp and overflowed lands" will not convey title, although the state held the lands at the time as "tax lands," even as against a subsequent purchaser thereof from the state as "tax lands" having actual notice of the second sale of the same as "swamp and overflowed lands."

FROM the chancery court of Smith county.

HON. SAMUEL WHITMAN, Chancellor.

Barnes, appellee, was complainant in the court below; the Eastman-Gardner Company, appellant, was defendant there. The object of the suit was to cancel a patent issued by the state to defendant for the lands in suit as "tax lands." The complainant had, before the issuance of defendant's patent, patented the lands from the state as "swamp and overflowed lands." The lands, several years before complainant's purchase had been patented by the state "as swamp and overflowed" lands and had been sold for taxes and purchased at the tax sale by the state.

From a decree overruling defendant's demurrer to the bill of complaint it appealed to the supreme court.

*Shannon & Street,* for appellant.

The sole question to be determined by this court is whether or not the lands held by the state as forfeited tax lands may be

conveyed by the land commissioner under Code 1892, § 2574, as swamp and overflowed lands.

The bill shows that the title the state once held to said land as swamp and overflowed lands passed out of the state to one Mangrum in 1854. The land was, of course, thereafter subject to assessment and sale for taxes. This was done in 1883, the tax not being paid, the land was offered for sale for the unpaid taxes in 1884, and no one appearing to purchase same, it was forfeited to the state. State never, at any time, after 1854, according to the bill, held the land as swamp and overflowed land, for in that year it parted with its title to Mangrum. The state's only title, at the time it sold to appellee in 1903, was that acquired by reason of the tax sale in 1884. It, therefore, held the land as forfeited tax land and not as swamp and overflowed land; and, since the state divides its lands into classes and sells according to the class to which each tract belongs, it follows that a sale of tax lands as swamp and overflowed lands and the issuance of a swamp and overflowed land patent therefor, does not convey the state's title and *vice versa*.

The provisions of law governing the state land office, at the time of the patents to the land involved in this suit were issued are contained in the Code of 1892 and are found in chapter 73 of that Code.

The state lands are divided into classes and different sections deal with and fix the price of the different classes.

The scheme is perfectly plain. If the land commissioner is dealing with swamp and overflowed lands, he sells it from his lists of such lands, either at $1.25 per acre or more, as fixed by the governor and himself. If he deals with tax lands, he sells it from his lists of tax lands, at $1.25 per acre or less, as fixed by himself and the governor.

Code 1892, § 2568, provides that "the land commissioner, under the general direction of the governor, shall sell the public lands in the manner and on the terms provided herein for the several classes thereof," and, by section 2581, "the land com-

missioner shall keep a separate register of the several different classes of public lands, etc."

The land commissioner's authority is therefore limited and must deal with the land according to the class to which it belongs. No one would contend that the state's school lands would be conveyed by the erroneous issuance of a swamp and overflowed land patent therefor; nor that the state's swamp and overflowed lands would be conveyed by the issuance of a tax patent. Suppose the land commissioner should sell swamp and overflowed land as tax land, and he and the governor should fix the price at fifty cents an acre or less, as they might do when dealing with tax lands alone, could it be contended that such a conveyance would carry the state's title to the land, which was in fact swamp and overflowed land, and not tax land, and whose price is fixed by law at not less than $1.25 per acre? The answer is plain. The land commissioner can act only within the scope of his authority, and when acting beyond the scope of his authority, he does not bind the state. There can be, then, no question of estoppel in this case. The state is never estopped by the unauthorized acts of its agents and representatives. 11 Am. & Eng. Ency. of Law (2d ed.) 397; *Childress Land Co. v. Baker,* 56 S. W. 756, 759; *State v. Brewer,* 64 Ala. 287; Bigelow on Estoppel, 586; *Pulaski Co. v. State,* 42 Ark. 118; *Attorney-General v. Marr,* 55 Mich. 445.

In *Murdock v. Chaffe,* 67 Miss. 752, 7 South. 519, it is said by our own court that "a party claiming under the exercise of a statutory power of sale by an agent of the state must see to it that the precedent facts exist warranting the exercise of the power."

In *Howell v. Miller,* 88 Miss. 655, 42 South. 129, a case nearer like the one at bar than any other case in our reports, so far as we have observed, the question of estoppel against the state was pressed vigorously in the brief of counsel for appellant, and yet Mr. Justice CALHOON, deciding the case, did not refer to the question of estoppel at all.

And yet, if the state can be estopped by its conveyance issued without authority, it would have been estopped in *Howell v. Miller, supra,* because, in that case, the state had issued its tax patent without authority, and afterward issued its swamp land patent, with authority; and, in the contest between the two patents, the one issued by authority, to wit: the swamp land patents, was upheld; and the one issued without authority was disregarded. There was as much estoppel against the state in the *Howell case* as there is in this case; but there is none in either case.

We beg to refer the court to the very able briefs of counsel in the *Howell case.*

*B. E. Eaton,* for appellee.

Code 1892, § 2578, authorizing the sale of tax lands, provides that they may be sold under the same regulations as swamp and overflowed lands, except that the governor and the land commissioner are authorized to provide a minimum price for tax lands at less than $1.25 per acre, which is the minimum price of swamp and overflowed lands.

Code 1892, § 2580, authorizing the sale of such other lands as the state may acquire through all other sources, provides that these lands are to be sold under the same regulations as swamp and overflowed lands.

It is to be seen, therefore, that, with the exception of the Chickasaw school lands, the sale of every other classification of lands is authorized to be made under the same regulations that govern the sale of swamp and overflowed lands. In other words, the law makes the conditions of sale of swamp and overflowed lands the basis upon which the sale of all other kinds of land is to be made with the exception already noted. While the law authorizes the sale of tax lands at less than the sale of swamp and overflowed lands, it is readily seen that, by the sale of tax lands upon the theory that they were swamp and overflowed lands, the state could not, possibly, lose but might gain.

When, therefore, section 2568 provides that the land commissioner shall sell state lands upon the terms required by law, it can only mean that the state must receive for the lands sold the price fixed by law, and that the sale must conform to any special conditions, if any, of the section authorizing the sale. It will be noticed that none of the above sections provides for any conditions of sale whatever, except that when sold the state shall receive certain varying prices. Inasmuch as section 2568 requires that sales must be made not only upon the terms provided by law but in the manner provided by law, and inasmuch as no manner of sale is set forth in any of the statutes authorizing a sale, it was evidently the intent of the legislature that the manner of sale was to be comprehended in section 2561. This section is the only one which provides the manner in which a sale made by the state is to be evidenced. In other words, it prescribes what are and must be the vital necessary and essential elements of the instrument by which the state divests itself of its title. This section provides that "All conveyances of land by the state in fee shall be by patent from the land office, and every patent issued shall be under the seal of the office, signed by the land commissioner, countersigned by the governor and attested by the secretary of state, under the Great Seal; no more than one eighth of a section of land shall be embraced in the same patent." This, then, being the statutory regulation for the issuance of a state patent, it should follow that if a patent contains provisions other than above, they would be unauthorized, would be of no legal or binding effect, and ought to be regarded as surplusage. If this be the correct interpretation of the section, all recitals, in a patent, that lands were sold pursuant to the provisions of the law authorizing the sale of swamp and overflowed lands, or internal improvement lands, or tax lands, or any other lands, are authorized, and consequently without any legal effect. In like manner, in such recitals to the effect that the state acquired title through any particular source, such recitals are likewise unauthorized. The conditions

of sale seem thus to be wholly independent of the classification of lands or the source of title.

If this is true, why does the law provide for classification? The state owns considerable quantities of land in fee, which lands are offered for sale under certain conditions. The state is also trustee, and holds thousands of acres in trust for various purposes. It is necessary, of course, that these lands be kept separate and distinct, one from the other, and it is necessary also that classifications exist in order that the state might put proper valuations upon the lands to be sold. It is necessary also that state lands be so systematized that the land commissioner's work will be facilitated as much as possible in looking after the various lands. It is also necessary that the land commissioner's accounts with the state should be so kept that they might be properly audited and accounted for. It follows, therefore, that if these are the correct reasons then the classification is provided for, solely, with reference to convenience in keeping the accounts of the different lands, and is not intended to be a condition precedent to the issuance of state patents. If to mistake the classification of land is to defeat a title issued in good faith, then classification becomes a snare and would destroy the state's ability to sell its lands because of the hazard to a purchaser who might lose the lands purchased, with all improvements, years after he had bought it and felt secure in the integrity of the state's conveyance.

These constructions seem to be what is meant "by the manner and terms of sale" under which the sales of state lands are to be made. If so, then the appellee is protected in his purchase by the provisions of law. He paid for the land $1.25 per acre, and this price was fixed not only upon the theory that the land sold was swamp and overflowed land, but also upon the theory that it was tax land.

The case of *Howell v. Miller*, 88 Miss. 655, 42 South. 129, referred to in appellant's brief is not in point upon the facts alleged, and has no principle controlling the present case, unless

the opinion, inferentially, holds that a sale to be valid must be had with reference ^lone to the proper classification. The opinion does not discuss the points raised in the briefs. However, I would like to direct the court's attention to one statement of facts that only appears in the brief of Mess. McWillie & Thompson, on page 666 of such reported case. It there appears that the land which was in fact swamp and overflowed land, with a fixed value of $2.50 per acre, was sold as tax lands for $1.25 per acre. Thus the state would have suffered a loss of one-half the value of the land if the sale as tax land had been sustained. In other words, the land was not sold for the price which under the law it ought to have brought; and while no reference is made in the opinion of the court to what point or points lead to the decision, this evidently was a most vital one. This fact, at least, totally differentiates this case from the case at bar. The case of *Hardy v. Hartman,* 65 Miss. 504, 5 South. 545, referred to in the briefs in the *Miller case* is totally unlike the case at bar in the fact that a special act of the legislature was passed prescribing conditions under which the land was to be conveyed and the land was conveyed although the conditions of law authorizing the conveyance were not complied with. It is thus different from the case at bar.

MAYES, J., delivered the opinion of the court.

Under the facts alleged in the bill of complaint the state's title to the land in question was not by virtue of its being swamp and overflowed lands under the act of Congress vesting the title to such lands in the state. The land had been swamp and overflowed lands, and as such had been owned by the state; but long prior to the patent issued to Barnes the state had issued its patent for the lands as swamp and overflowed lands to one Mangum, and the land had become the subject of individual ownership, and so liable to the state for taxes. In 1884 the land was sold to the state for the taxes of 1883, and it was by virtue of this tax sale that the state owned the lands on the 29th day of

December, 1903, the date when the appellee obtained his patent from the land office. But the patent issued to appellee was a patent under section 2574 of the Annotated Code of 1892; that is to say, the patent was for swamp and overflowed lands, and, since the state had no such title to the lands in question, this patent was unauthorized and conveyed no title whatever. The patent issued to Eastman-Gardner Co. afterwards was under section 2578, which deals with tax lands; and, since it was only a tax title which the state had, this patent conveyed the true title, nor can the rights of Eastman-Gardner Co. be in any way affected by reason of the fact that they knew that appellee had obtained a patent to the lands before that time as swamp and overflowed lands. The state conveys by its patent all the title it has of the character described in the patent only, but does not convey any other or different title. In other words, where the state makes a conveyance as of swamp and overflowed lands, and issues its patent as such, it conveys only such title as it has as swamp and overflowed lands, and if it has no such title, nothing passes by the conveyance. If the conveyance is of a tax title, the patent passes all the title the state has of that character of title, but of no other. It is readily seen that if we were to adopt any other view it would destroy the scheme outlined by the statute for the separate classification and dealing with various kinds of land owned by the state.

*Reversed, and bill dismissed.*