# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CP-01552-SCT

*RICKY SMITH*

*v.*

*JACKSON STATE UNIVERSITY, JSU,*
*DEPARTMENT OF FINANCE &*
*ADMINISTRATION AND SECRETARY OF STATE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2007 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RICKY SMITH (PRO SE) |
| ATTORNEYS FOR APPELLEES: | SARAH E. BERRY |
| | NANCY MORSE PARKES |
| | REGINA R. QUINN |
| | DAVID SCOTT BUFORD |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/18/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is a case of the left hand not knowing what the right hand is doing. The State of Mississippi acquired land at a tax sale and then sold it to the plaintiff Ricky Smith. The same land was condemned by the Mississippi Department of Finance and Administration for the use and benefit of Jackson State University. Thus, we have a dispute between the plaintiff and the State of Mississippi over who owns the property. The Chancery Court of Hinds County, First Judicial District, granted summary judgment to the State. We affirm, albeit for different reasons.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.    On August 28, 2000, certain real property (the "Property") owned by, and assessed to, the Estate of A. H. Noeinger (the "Estate"), was sold to the State of Mississippi for unpaid taxes for the year 1999.[1]    The Property was not redeemed, that is, no one ever paid the delinquent taxes.  However, on June 12, 2001, after the tax sale but before its maturity, the Mississippi Department of Finance and Administration filed a condemnation suit against the Estate for the purpose of acquiring the Property for an expansion of Jackson State University. The suit failed to name the State of Mississippi as a defendant (which had acquired the Property at the tax sale), and no notice of the condemnation suit was provided to the Mississippi Secretary of State.

¶3.    On December 19, 2001, the Special Court of Eminent Domain (First Judicial District of Hinds County) entered a Final Judgment ("Condemnation Order") condemning the subject property and awarding it to the Mississippi Department of Finance and Administration ("DFA").    The Condemnation Order specifically stated that "the real property being condemned herein is for public use and is to be used for Jackson State University . . . ."

¶4.    Despite the fact that the DFA had condemned the Property (that is to say, had condemned that interest in the Property held by the Estate), the Property was included on the Hinds County Chancery Clerk's Tax Forfeited Land Certificate, which was certified to the Secretary of State on September 10, 2002.[2]  Thus, as of September 2002, DFA thought it

---

[1]According to the sale, title of the said land was to become absolute unless it was redeemed from the tax sale on or before August 28, 2002.

[2]The purpose of a chancery clerk's Tax Forfeited Land Certificate is to notify the Secretary of State that certain land has been purchased for taxes and is available to be sold.

owned the Property through condemnation, and the State of Mississippi thought it owned the property through the tax sale, which was not redeemed.

¶5. On December 3, 2003, the DFA purported to convey the Property by a Special Warranty Deed to "the State of Mississippi for the use and benefit of the Board of Trustees of the Institutions of Higher Learning." This conveyance was recorded in the land deed records of Hinds County on December 8, 2003. However, the Secretary of State listed the Property at a tax forfeiture sale on August 31, 2006, and the plaintiff, Ricky Smith, purchased a forfeited tax land patent for the Property.

¶6. These events led to a dispute of title ownership between Smith and Jackson State University. On November 3, 2006, Smith filed a complaint seeking to confirm his forfeited tax land patent. The defendants served their answers and motions for summary judgment. The trial court granted the defendants' motion for summary judgment and, in accordance with Mississippi Code Section 29-1-85, ordered the Secretary of State to refund the purchase price, together with interest, to Smith. It is from this summary judgment that Smith appeals.

**ANALYSIS**

¶7. We review a trial court's grant of summary judgment de novo. ***Miller v. R.B. Wall Oil Co.***, 970 So. 2d 127, 130 (Miss. 2007). A trial court may grant summary judgment where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c).

¶8. Our quest for a solution to this quagmire begins with a recognition that the fee to property always abides somewhere, although it may be in abeyance. Thus, we must follow

3

the fee through the several chronicled events. ***Equity Servs. Co. v. Miss. State Highway Comm'n***, 192 So. 2d 431, 432 (Miss. 1966).

*Ad Valorem Tax Sale in 2000*

¶9.   No one disputes that, prior to August 28, 2000, the Estate owned the fee to the Property.  Because the Estate failed to pay the 1999 taxes due on the Property, it was sold for the delinquent taxes and struck off to the State of Mississippi.  Thus, on August 28, 2000, the fee to the Property passed to the State of Mississippi, subject to the delinquent taxpayer's right of redemption as provided in Section 27-45-3 of the Mississippi Code, which states, in part:

> All such lists [of lands struck off by the tax collector to the state] shall vest in the state . . . a perfect title to the land sold for taxes, but without the right of possession for the period of and subject to the right of redemption . . . The lists hereinabove provided shall, when filed with the clerk, be notice to all persons in the same manner as are deeds when filed for record.

Miss. Code Ann. § 27-45-3 (Rev. 2006)

¶10.   This statutory language clearly provides that – even though the Estate retained a right of possession and redemption – the fee passed to the State of Mississippi on August 28, 2000, and the State became the "owner of the land." ***State v. Rogers***, 206 Miss. 643, 654, 39 So. 2d 533, 537 (1949).

¶11.   After the sale and during the time allowed for redemption (in this case, August 28, 2002), the State possesses "an inchoate title" to the land which "may or may not ripen into a perfect title." ***Id***.  After the redemption period is over – assuming the property is not redeemed – the Secretary of State "shall have charge . . . of the lands forfeited to the state for nonpayment of taxes."  Miss. Code Ann. § 7-11-11 (Rev. 2002).

4

*Condemnation Proceedings in 2001*

¶12.    Under Mississippi law, the DFA has authority to acquire real property through eminent domain proceedings.

> If the [Department of Finance and Administration]³ shall be unable to agree with *the owner or owners of any such land* or real property which is necessary or desirable for the public use in connection with any such project, [the Department of Finance and Administration] shall have the power and authority to acquire any such land or real property by condemnation proceedings in the manner otherwise provided by law and, for such purpose, the right of eminent domain is hereby conferred upon and vested in said [Department of Finance and Administration].

> Miss. Code Ann. § 31-11-25 (Rev. 2005) (emphasis added).

¶13.    The DFA initiated condemnation proceedings against the Estate on June 12, 2001, which was after the fee had transferred to the State of Mississippi.    Thus, argues Smith, DFA had the wrong sow by the ear. We agree. The fee holder (the State of Mississippi) was not named as a party to the condemnation proceedings.  Because the condemnation was filed against the Estate, DFA stood only to acquire that which was held by DFA, that is, the temporary rights of redemption and possession held by the Estate.  These rights expired on August 28, 2002 , and thereafter, neither the Estate nor the DFA had any interest or rights in the Property.

¶14.    Furthermore, Smith argues that the condemnation proceeding was null and void because the Secretary of State was not notified or made a party to the proceeding.  His argument is based on this Court's ruling in ***Mississippi State Highway Commission v. Casey***,

---

³Although Section 31-11-25 actually uses the term "office of general services," Section 7-1-451 provides that, whenever the term "office of general services" appears in any law, the same shall mean the Department of Finance and Administration.  Miss. Code Ann. §§ 31-11-25 (Rev 2005), 7-1-451 (Rev. 2002).

253 Miss. 685, 178 So. 2d 859, 863 (1965), which stated that a tax-sale purchaser was a necessary party to the eminent domain proceeding initiated before the redemption period was over.

¶15. In *Casey*, the plaintiff purchased land at a tax sale. *Casey,* 178 So. 2d at 859. Prior to the expiration of the redemption period, the Mississippi State Highway Commission filed condemnation proceedings. *Id*. at 859-860. The Highway Commission did not redeem the tax sale, and a tax deed was duly executed and delivered to the plaintiff. *Id*. The Court held that the plaintiff was a necessary party to the condemnation proceedings, and since he was not joined, his tax title was sufficient to entitle him to enjoin the Highway Commission from entering the property. *Id*. at 863. The Court emphasized that "[c]learly Casey not only had an interest in the property, but such also entitled him to be recognized in the eminent domain proceedings." *Id*.

¶16. Moreover, Section 11-27-7 expressly provides the method of acquiring property by eminent domain, including the notice requirements.[4] In *New v. State Highway Commission*, this Court found that the purpose of this provision of law is "to give all persons *interested* in the property sought to be acquired by eminent domain proceedings an opportunity to be heard at one time, so as to prevent subsequent litigation by interested persons who were not

---

[4] "The circuit clerk, or the plaintiff by his attorney, shall forthwith present such complaint to the circuit judge or county judge, as the case may be, who shall by written order directed to the circuit clerk fix the time and place for the hearing of the matter, in term time or vacation, and the time of hearing shall be fixed on a date to allow sufficient time for each defendant named to be served with process as is otherwise provided by law, for not less than thirty (30) days prior to the hearing. If a defendant, or other party in interest, shall not be served for the specified time prior to the date fixed, the hearing shall be continued to a day certain to allow the thirty-day period specified." Miss. Code Ann. § 11-27-7 (Rev. 2004).

notified." ***New v. State Highway Comm'n,*** 297 So. 2d 821, 823 (Miss. 1974) (emphasis added).  The Court held in ***New*** that:

> [T]he Legislature intended to set out in detail the method of acquiring property by eminent domain; that the requirement of the law that all parties of interest be made parties and be duly notified by proper process is not directory, but is part of the procedure and must be *strictly followed*.

***Id***. (citing ***Miss. Power Co. v. Leggett***, 197 So. 2d 475 (Miss. 1967) (emphasis added)).

Also, in ***Mississippi State Highway Commission v. West***, this Court stated that "a condemner must determine, at his peril, the names of the owner and other persons having an interest in, or lien on, the premises sought to be condemned . . . [and] the reason underlying such rule is to protect the right both of the condemner and of parties having a beneficial interest in the premises . . ." ***Miss. State Highway Comm'n v. West***, 181 Miss. 206, 218, 179 So. 279, 282 (1938).

¶17.    We find these cases on point here.  Like the plaintiff in ***Casey***, the Secretary of State had a clear "interest in the property."  Pursuant to the Mississippi Code Annotated Section 7-11-11, which enumerates the duties and powers of the Secretary of State, the property was to come under the Secretary of State's charge once the redemption period was over.   This entitled the Secretary of State "to be recognized in the eminent domain proceedings." ***Casey***, 178 So. 2d at 863.  If the DFA had strictly followed the procedural requirements of Section 11-27-7, it would have named the Secretary of State as a defendant.[5]  The Secretary of State's

---

[5]We reject the plaintiff's argument that, according to Mississippi Code Annotated Section 29-1-1, the Secretary of State should have signed the Condemnation Order to validate the transfer of land.  Condemnation proceedings are governed by Mississippi Code Section 31-11-25 rather than Mississippi Code Section 29-1-1, which concerns the sale or purchase of state-held land.  The acquisition of the property at issue in this case by the DFA was not a purchase or sale.  Therefore, it was not necessary to obtain the Secretary of State's signature to validate the conveyance.  Miss.

7

refusal to object after the fact to the Condemnation Order is of no value. Had the Secretary of State been notified or named as a defendant, this case would not be here.

*Conveyance by a Special Warranty Deed in 2003*

¶18. The DFA purported to convey title to the Institutions of Higher Learning, but it could convey only such title as it held. ***Eastman, Gardner & Co. v. Barnes***, 95 Miss. 715, 49 So. 258 (1909). In ***Barnes***, this Court stated:

> the state conveys by its patent all the title it has of the character described in the patent only, but does not convey any other or different title. In other words, where the state makes a conveyance as of swamp and overflowed lands, and issues its patent as such, it conveys only such title as it has as swamp and overflowed lands, and if it has no such title, nothing passes by the conveyance. If the conveyance is of a tax title, the patent passes all the title the state has of that character of title, but of no other.

***Barnes,*** 49 So. at 258. Because of the defective condemnation proceedings, the DFA did not hold title to the property. Thus, DFA was incapable of transferring any ownership interest to the Institute of Higher Learning through the Special Warranty Deed,[6] and therefore the Special Warranty Deed was, and is, void.

*Sale of Forfeited Tax Land Patent to the Plaintiff in 2006*

¶19. Because the condemnation proceedings were invalid, the State of Mississippi perfected its fee at the conclusion of the redemption period. Therefore, the tax land patent purchased by Smith vested him with title in the property.[7] The trial court's grant of summary

---

Code Ann. § 29-1-1 (Rev. 2005).

[6] The Secretary of State did sign the Special Warranty Deed as required under Mississippi Code Annotated Section 29-1-1 (4).

[7] Smith's remaining arguments are without merit. The chancellor used the appropriate legal standard in determining summary judgment was appropriate. Miss. R. Civ. P. 56(c). Cases cited

8

judgment is, thus, reversed. Accordingly, Section 29-1-85's requirement of refund of the purchase money is not applicable.

¶20. Jackson State University argues that the tax patent is void due to the failure of the Secretary of State to provide "thirty (30) days advance notice of the intended sale . . . to all state agencies" pursuant to Mississippi Code Annotated Section 29-1-1(4).[8] As evidence of the Secretary State's failure to do so, Jackson State University presents the affidavit of its Senior Vice President for Finance and Operations, Troy Stovall, who claimed that Jackson State University never received any notice of the sale of the subject land.

¶21. We find that Jackson State University falls under the ambit of Mississippi Code Annotated Section 29-1-1(4) because it is a state agency for the purposes of this section.[9] Therefore, the Secretary of State should have provided Jackson State University with a thirty-day advance notice of the sale. The plaintiff, as well as the Secretary of State, fails to rebut

by Smith for the proposition his ownership of a patent grants him the highest evidence of legal ownership are United States land-patent cases which analyze original transfers of land from the federal government and are irrelevant to this case. *See Sweatt v. Corcoran*, 37 Miss. 513 (1859); *Bledsoe v. Doe ex dem. Little*, 5 Miss. 13 (1839).

[8]The statute states in pertinent part: "Before any state-held land is sold to any individual or private entity, thirty (30) days' *advance notice of the intended sale* shall be provided by the Secretary of State *to the State Legislature, to all state agencies and to all governing authorities within the state* for the purpose of ascertaining whether an agency or governing authority has a need for the land and for the purpose of ascertaining whether the sale of the land was authorized by law. If no agency or governing authority within the state expresses in writing to the Secretary of State by the end of the thirty-day period a desire to use the land, then the Secretary of State, with the prior approval of the Mississippi Legislature to sell the state-held land, may offer the land for sale to any individual or private entity." Miss. Code Ann. § 29-1-1(4) (emphasis added).

[9] Mississippi Code Annotated Section 29-1-1(4) adopts Section 31-7-1(a)'s definition of agency, which includes university. See Miss. Code Ann. § 29-1-1(4) (Rev. 2005) and Miss. Code Ann. § 31-7-1(a) (Rev. 2005).

this claim. Because the record contains no evidence of a thirty-day advance notice, we hold that the sale of the forfeited land tax patent was void and did not vest title in Smith.

## CONCLUSION

¶22. Because of the DFA's and the Secretary of State's failure to follow statutory requirements, we find that the condemnation proceedings, the Special Warranty Deed and the sale of the forfeited tax land patent were invalid. The title, consequently, still vests in the State of Mississippi. Therefore, we affirm the grant of summary judgment and the award of a refund of $5,695, plus interest, to Smith.

¶23. **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING**.